UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:19-CR-00206-KKC-EBA

(Related Civil Action No. 5:22-CV-00206-KKC-EBA)

UNITED STATES OF AMERICA, PLAINTIFF,

V.   **REPORT AND RECOMMENDATION**

ETRIC PRUITT, DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

## INTRODUCTION

This matter is before the Court on the 28 U.S.C. § 2255 motion of Etric Pruitt, who seeks to vacate, set aside, or correct his conviction and sentence. [R. 658]. The United States responded in opposition. [R. 709]. So, this matter is ripe for review.

## FACTS

Nearly twenty years ago, in July 2004, Etric Pruitt was drafted into the NFL by the Atlanta Falcons. He remained on the Falcons' roster for about a year before he was signed by the Seattle Seahawks. He played for the Seahawks during the 2004–05 season, which culminated in a Super Bowl appearance (where they lost to the Pittsburgh Steelers). The following season, Pruitt was signed by the Detroit Lions, where he remained until he retired from the NFL. In all, Pruitt's career as a professional defensive back spanned four years and included one Super Bowl appearance.

A decade after he retired from the NFL, Pruitt conspired with other retired players— namely, Robert McCune, John Eubanks, Tamarick Vanover, Clinton Portis, Ceandris Brown,

James Butler, and Fredrick Bennett—to defraud the Gene Upshaw NFL Player Health Reimbursement Account Plan. [R. 78-1 at pgs. 2–3]. As a vested member of the Plan, Pruitt was permitted to seek reimbursement for eligible health care costs up to a certain amount commensurate with his years spent in the NFL. [*Id.* at pg. 3]. On at least two occasions, Pruitt sought reimbursement for expensive medical equipment that was never actually provided to him. [*Id.* at pg. 4]. To do so, Pruitt paid McCune to assist in the submission of falsified claims on his behalf. [*Id.*]. The falsified claims included falsified prescriptions, letters of medical necessity, and even invoices. [*Id.* at pgs. 3–4]. These falsified claims for reimbursement were submitted between 2017 and 2018 and amounted to $64,719.40. [*Id.* at pg. 4].

Pruitt and his co-conspirators were indicted by an Eastern District of Kentucky grand jury on December 6, 2019. [R. 1]. Less than two months later, on January 27, 2020, Pruitt pled guilty to conspiracy to commit health care fraud. [R. 76; R. 78]. He was sentenced to three months in federal prison on October 5, 2021, followed by a three-year term of supervised release. [R. 498]. Pruitt's sentence began on February 28, 2022. [R. 524]. Pruitt completed his term of imprisonment, and began his three-year term of supervised release, on May 11, 2022. [R. 709 at pg. 2]. In his plea agreement, Pruitt waived any right to appeal, and so did not file an appeal. [R. 78]. Also, Pruitt waived any right to collaterally attack his conviction or sentence, save for claims of ineffective assistance of counsel. [*Id.*]. Pruitt filed this Section 2255 motion on August 11, 2022. [R. 658].

## STANDARD OF REVIEW

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence. A prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).  For a federal prisoner to prevail on such a claim, he bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error

of fact or law occurred that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003). If the prisoner alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Id.* at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

## ANALYSIS

Pruitt asserts three grounds for relief in his Section 2255 motion. [R. 658]. First, that Pruitt's plea agreement cannot bind him because he did not understand it. [*Id.* at pg. 5]. Second, that Pruitt's plea agreement cannot bind him because it did not include the bargained-for lower sentence of probation. [*Id.* at pg. 6]. And third, that Pruitt's trial counsel was ineffective by not ensuring that Pruitt understood the terms and consequences of his plea agreement. [*Id.* at pg. 8].

The United States opposes Pruitt's motion for two reasons. [R. 709]. First, the United States argues that Pruitt's plea waiver precludes his first two grounds of relief. [*Id.* at pgs. 2–5]. Second, the United States argues that Pruitt's ineffective assistance of counsel claim is meritless. [*Id.* at pg. 5]. Because the United States asserts that a voluntary waiver precludes Pruitt's Section 2255 motion, the Court will first consider that affirmative defense before reaching the merits.

### A

"It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763–64 (6th Cir. 2001) (internal quotation marks omitted). The right to collaterally attack a sentence is one such waivable right. *Davila v. United* States, 258 F.3d 448, 450–51 (6th Cir. 2001). Where

waiver provisions are clear and are intentionally and voluntarily included in the terms of a plea agreement, the waiver binds. *Fleming*, 239 F.3d at 763–64.; *see United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004) (referencing *Fleming*, 239 F.3d at 764).

Here, Pruitt's plea agreement reads, in relevant part:

> The Defendant waives the right to appeal the guilty plea, conviction, and sentence. *Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.*

[R. 78 at pg. 3] (emphasis added).

The terms of Pruitt's plea agreement are plain and clear: he is proscribed from collaterally attacking his guilty plea, conviction, and sentence, *except* when raising claims of ineffective assistance of counsel. [*Id.*]. At his rearraignment hearing, the United States reviewed the pertinent terms of the plea agreement—including the waiver provision—in open court to ensure Pruitt understood and agreed to the terms. [R. 76]. He did. [*Id.*]. Ultimately, the Court found Pruitt "to be fully competent and capable of entering an informed plea and that he enter[ed] the plea knowingly and voluntarily." [*Id.*]. Therefore, Pruitt is bound to the terms of his plea agreement. *Davila*, 258 F.3d at 450–51; *Fleming*, 239 F.3d at 763–64; *Calderon*, 388 F.3d at 200.

Here, Pruitt's Section 2255 motion advances two non-ineffective assistance of counsel claims and one ineffective assistance of trial counsel claim. [R. 658; R. 658-1]. Because Pruitt waived his right to collaterally attack his plea, conviction, and sentence, except for claims of ineffective assistance of counsel, Pruitt's two non-ineffective assistance of counsel claims are barred by the plea agreement. [R. 78 at pg. 3].

**B**

Having disposed of Pruitt's first two grounds for relief, the Court will now consider the merits of Pruitt's ineffective assistance of counsel claim. To successfully assert ineffective assistance, Pruitt must show two essential elements: (1) deficient performance by counsel and (2)

how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

i

*First*, regarding deficient performance, reviewing courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show that representation fell below an objective standard of reasonableness, Pruitt must articulate specific acts or omissions that demonstrate how trial counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690. In other words, Pruitt bears the burden of showing that his trial counsel "made errors so serious that [he was] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. While reviewing Pruitt's ineffective assistance of counsel claims, the Court must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

*Second*, Pruitt must establish prejudice by showing that there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694–95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Strickland*, 466 U.S. at 696). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### ii

Pruitt asserts that his trial counsel committed two errors that deprived him of effective assistance of counsel: "(1) he understated the effects [Pruitt's] injuries were having on his capacity, and (2) he failed to ensure that [Pruitt] understood the plea agreement." [R. 658-1 at pg. 11]. As to deficient performance, Pruitt claims that his trial counsel advised him "to say that he had 'slight memory problems' because he feared that [Pruitt] would lose the reduced sentence that came with the plea agreement if [Pruitt] did not state that he understood the deal." [*Id.*] (referencing [R. 658-3 at pgs. 2–3]). And as to prejudice, Pruitt claims he "was given a stricter sentence" because "of having to hide his capacity from the Court[.]" [*Id.*]. In fact, Pruitt, through post-conviction counsel, states that "somehow" Pruitt "received *no reduction in sentence* even though he aided the State in its investigation." [*Id.*] (emphasis in original).

However, Pruitt's deficient performance arguments are not compelling for a few reasons. First, Pruitt offers no substantiation for his claim that Pruitt's injuries impacted his capacity—except for Pruitt attesting in an un-notarized affidavit that he suffered a concussion at some point. Second, Pruitt's trial counsel attests in an un-notarized affidavit that there was no indication that Pruitt's competency or capacity should have been called into question. [R. 709-1 at pg. 3] ("At no time during said meeting did Etric Pruitt bring up his health as an issue to understanding the import of our discussions. To [counsel], Etric Pruitt at all times during the meeting appeared to understand that he had committed a crime and that he was pleading guilty."). Third, Pruitt's trial counsel met with Pruitt to discuss the United States' proposed plea agreement in-depth. He walked Pruitt

through the agreement and advised him on the applicable sentencing guidelines. Thereafter, Pruitt told his trial counsel "that he understood the guidelines and the applicable guideline range," and he executed the agreement. [*Id.*].

Also, Pruitt's prejudice argument is without merit. While Pruitt claims that he "received *no reduction in sentence* even though he aided the State in its investigation," that claim is plainly false. [R. 658-3 at pg. 3] (emphasis in original). A review of the record confirms that Pruitt did, in fact, receive a sentence reduction. Pruitt's advisory sentencing guideline range was eight to fourteen months. Yet, Pruitt received just a three-month sentence—a sentence less than half the bottom of the guideline. So, even if Pruitt *could* show deficient performance, he fails to show prejudice given that he received a below-guidelines sentence. *See United States v. Dillard*, 801 F. App'x 948, 952 (6th Cir. 2020) (holding that counsel who "procured a below-guidelines-range sentence for defendant" could not be found "ineffective . . . on this record").

## C

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039–40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Here, Pruitt has not made a "substantial showing" as to any claimed denial of his constitutional rights. Moreover, the Court is unconvinced that reasonable jurists would find its

determination on the merits debatable. Therefore, this Court recommends that the District Court deny a Certificate of Appealability.

## CONCLUSION

Pruitt petitions the Court for a writ of habeas corpus under Section 2255. [R. 658]. However, Pruitt waived his right to file a collateral attack motion, except for claims of ineffective assistance of counsel. Therefore, the Court did not consider Pruitt's first two grounds for relief. However, as Pruitt's third ground of relief asserted ineffective assistance of counsel, the Court considered the claim's merits. Having found that Pruitt's ineffective assistance of counsel claim lacks merit, the Court will recommend the District Court deny Pruitt's (1) Section 2255 petition and (2) Certificate of Appealability, if Pruitt requests one.

## RECOMMENDATION

Upon review of the record, and for the reasons stated herein, and in accordance with Rule 10 of the Rules Governing Section 2255 Habeas Cases, IT IS RECOMMENDED that:

1. Pruitt's Section 2255 motion [R. 658] be DENIED; and

2. A Certificate of Appealability be DENIED as to all issues raised, should Pruitt so request.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections

within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed January 18, 2023.



Signed By:
<u>Edward B. Atkins</u>  *EBA*
United States Magistrate Judge